### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

STATE COURT CASE NO.:  2017-004616-CA-01

BDT INVESTMENTS, INC.

                 Judgment Creditor,

v.

LISA S.A.,

                 Judgment Debtor,

BANCO SANTANDER INTERNATIONAL,

                 Garnishee.

_____/

### GARNISHEE BANCO SANTANDER INTERNATIONAL'S
### NOTICE OF REMOVAL

PLEASE TAKE NOTICE THAT, pursuant to 12 U.S.C. § 632, Garnishee Banco Santander International ("BSI") removes to this Court the state court action styled *BDT Investments, Inc. v. Lisa S.A.*, Case No. 2017-004616-CA-01, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida ("State Action"), and states:

## I.  INTRODUCTION

Alleged Judgment Creditor and Garnishor BDT Investments, Inc. ("BDT" or "Garnishor"), a Barbadian company, filed an action in Florida state court against an alleged Judgment Debtor, Lisa S.A. ("Lisa"), a Panamanian company, to domesticate an alleged foreign money judgment (the "Purported Foreign Judgment") originally entered in Panama in favor of BDT against Lisa.

### GUNSTER
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

In connection with the Purported Foreign Judgment, BDT served BSI, an Edge Act corporation organized under section 25A of the Federal Reserve Act, with a Writ of Garnishment (the "Writ"), in the name of Lisa and relating to any property of Lisa in the possession or control of BSI or any debts due to Lisa from BSI.

Along with the Writ, BDT also provided BSI with correspondence relating to Villamorey, S.A. ("Villamorey"), a Panamanian company doing business in Guatemala, even though Villamorey was not named in the Writ or the Purported Foreign Judgment. BDT claims that Lisa is a shareholder of Villamorey and that Villamorey has declared dividends in favor of Lisa. BDT further claims that various certificates of deposit held by Villamorey at BSI contain Lisa's declared dividends. Therefore, BDT argues it should be able to garnish Villamorey's account with BSI to obtain the alleged debt owed to Lisa or alleged property belonging to Lisa. Although BSI maintains that it does not have any property of Lisa in its possession or control, or owe any debts to Lisa, BSI has an account owned by Villamorey in which BSI has a perfected security interest stemming from a pledge from Villamorey to BSI for a loan to a foreign entity named Inversiones Agroindustriales de Centro America Inc. ("Inversiones"). Accordingly, the Writ and the claims relating to it arose out of transactions involving international or foreign banking or financial operations. *See* 12 U.S.C. §§ 611-633.

Furthermore, this action is being removed before trial in accordance with the Edge Act. Indeed, trial is not currently scheduled in this matter. After BDT filed the initial state-court papers to domesticate its Purported Foreign Judgment, it then filed a Motion for Post Judgment Writ of Garnishment and a corresponding Writ directed to BSI. In response, BSI filed an answer to the Writ. And in response, BDT filed a reply in support of the Writ. The State Action was stayed in October 2017 until May 4, 2018, due to an appeal of a discovery order by Villamorey.

2

**GUNSTER**

PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

To date, no depositions have been taken.  And, although the parties have exchanged written

discovery, this case is still in its early stages.  This Notice of Removal is timely under the Edge

Act.

Therefore, removal of the action to this Court is appropriate pursuant to 12 U.S.C. § 632.

## II.    REMOVAL PURSUANT TO THE EDGE ACT, 12 U.S.C. § 632

This action is removable pursuant to the Edge Act, 12 U.S.C. § 632, which grants federal

district courts original jurisdiction over actions arising out of transactions involving international

or foreign banking or financial operations, when one of the parties is a corporation organized

under the laws of the United States.  *Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374,

1377 (S.D. Fla. 2004) ("As noted earlier, the Edge Act also creates federal subject-matter

jurisdiction where a corporation organized under United States law is a party to this action.").

The Edge Act provides in pertinent part:

> Notwithstanding any other provision of law, **all suits of a civil nature** at common
> law or in equity **to which any corporation organized under the laws of the
> United States shall be a party, arising out of transactions involving
> international or foreign banking**, or banking in a dependency or insular
> possession of the United States, **or out of other international or foreign
> financial operations**, either directly or through the agency, ownership, or control
> of branches or local institutions in dependencies or insular possessions of the
> United States or in foreign countries, **shall be deemed to arise under the laws of
> the United States, and the district courts of the United States shall have
> <u>original</u> jurisdiction of all such suits**; and **any defendant in any such suit may,
> at any time before the trial thereof, remove such suits from a State court into
> the district court of the United States for the proper district by following the
> procedure for the removal of causes otherwise provided by law**. Such removal
> shall not cause undue delay in the trial of such case and a case so removed shall
> have a place on the calendar of the United States court to which it is removed
> relative to that which it held on the State court from which it was removed.

12 U.S.C. § 632 (2012) (emphasis added).  Where the Edge Act is invoked as a basis for

removal, moreover, "the federal court should be cautious about remand, lest it erroneously

deprive defendant of the right to a federal forum." *Stamm v. Barclays Bank of N.Y.*, No. 96 Civ. 5158 (SAS), 1996 WL 614087, at *1 (S.D.N.Y. Oct. 24, 1996) (citation omitted).

    **A.**      **The Basis for the State Action**

       The State Action stems from a Purported Foreign Judgment allegedly entered in Panama in favor of BDT and against Lisa, the alleged Judgment Debtor, for $19,184,680.00. *See* Writ of Garnishment, attached hereto as **Exhibit "A."** BDT is a Barbadian company, and Lisa is a Panamanian company. *See* Ex. A; *see also* Villamorey's Motion to Dissolve Writ of Garnishment and Garnishment on Account at Banco Santander International (specifically Exhibit B to the Motion, which contains an organizational chart of related entities), attached hereto as **Exhibit "B."** On February 27, 2017, BDT filed the Purported Foreign Judgment. *See* Purported Foreign Judgment, along with BDT's Counsel's Affidavit, Notice of Recording of Purported Foreign Judgment, and Certificate of No Objection by Lisa, attached hereto as **Composite Exhibit "C."** The Purported Foreign Judgment is comprised of what appears to be a Panamanian writ of execution against Lisa, dated May 31, 2012, allegedly in BDT's favor and against Lisa in the amount of $19,184,680.00 (File No. 958) ("Writ of Execution"), and a Panamanian writ of attachment in BDT's favor and against Lisa (for the same amount), dated December 12, 2012 (File No. 1838) ("Writ of Attachment"). *See* Exs. A, C.

       On February 27, 2017, BDT also filed an affidavit pursuant to Fla. Stat. § 55.604, seeking to domesticate the Purported Foreign Judgment under the Act. *See* Ex. C. Two days later, on March 2, 2017, *before notice had even been mailed out by the Clerk of Court*, Lisa, *the alleged*

*judgment debtor*, filed a purported affidavit of non-objection to the domestication of the Purported Foreign Judgment.[1]  *See* Ex. C.

On March 6, 2017, the Clerk of the Court mailed notice of the recordation of the Purported Foreign Judgment to Lisa.  *See* Ex. C.

On March 10, 2017, fewer than 30 days after BDT filed the Purported Foreign Judgment, and only four days after mailing notice to Lisa, the Clerk of the Court filed a Certificate Of No Objection to the domestication of the Panamanian judgment.  *See* Ex. C.  A hearing was never held on the domestication of the Purported Foreign Judgment.

In connection with BDT's efforts to domesticate the Purported Foreign Judgment against Lisa, on March 14, 2017, BDT filed a Motion for Post Judgment Writ of Garnishment, seeking the issuance of a writ of garnishment against BSI.  *See* BDT's Motion for Post Judgment Writ of Garnishment, attached hereto as **Exhibit "D."**  The Motion: (1) alleges that the Writ of Execution is a final judgment (Motion ¶ 1); (2) claims that BDT does not believe that Lisa has in its possession property sufficient to satisfy the Writ of Execution (Motion ¶ 5); and (3) suggests that BSI is a garnishee in this action.  *See* Ex. D.

On March 17, 2017, BDT served the post-judgment Writ, relating to any property of Lisa in the possession or control of BSI or any debts due to Lisa from BSI, on BSI.  *See* Ex. A; a copy of the proof of service as to BSI is attached hereto as **Exhibit "E."**  The Writ is directed to a single alleged judgment debtor: **Lisa**.  When BDT served the Writ, it also provided correspondence to BSI, a true and correct copy of which is attached hereto as **Exhibit "F,"**

---

[1]  BDT, the alleged judgment creditor, and Lisa, the alleged judgment debtor, are ultimately commonly owned and related entities.  For a summary of the long history of litigation among BDT, Lisa, Villamorey, and their affiliates and controlling family members, see the Introduction and Procedural Background sections in Exhibit B to this Notice of Removal.

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

contending that Lisa is allegedly owed money by a separate entity identified as "Villamorey, S.A.", a Panamanian company doing business in Guatemala.  *See* Exs. A, B.  The Writ did not name Villamorey as a judgment debtor.  *See* Ex. A.  BDT alleges that Villamorey (a Panamanian company doing business in Guatemala) declared dividends to Lisa (a Panamanian company) in the amount of $13,555,334.67 (including accrued interest on the dividends).  *See* BDT's Reply in support of Writ, attached hereto as **Exhibit "G."**[2]  According to BDT's allegation, which purportedly is based upon the audit report attached to BDT's Reply in support of the Writ, Villamorey deposited the declared dividends, in the form of various certificates of deposit, in Villamorey's account at BSI in Miami, rather than pay those dividends to Lisa.  *See* Exs. F, G.  In sum, BDT alleges that the deposit by Villamorey in BSI in Miami was for the benefit of Lisa.  *See* Exs. A, F, G.  BSI and Villamorey dispute these allegations.

On April 5, 2017, BSI timely answered the Writ, stating that it does not owe any debts to Lisa or have any property of Lisa in its possession or control (the "Answer").  *See* BSI's Answer, attached hereto as **Exhibit "H."**  Attached to BSI's Answer was an affidavit attesting to those facts (the "Affidavit").  *See* Ex. H.  To reiterate, the Writ is directed to a single alleged judgment debtor: **Lisa**.  *See* Ex. A.  On the other hand, (as a result of BDT's allegations regarding Villamorey and Lisa set forth in the correspondence delivered to BSI by BDT in connection with

---

[2]   According to the audit report attached to BDT's Reply, Villamorey:

> was established in June 1971, under the laws of the Republic of Panama
> for an indefinite period to be able to operate outside of such country.
> It is primarily devoted to making investments in Guatemalan companies'
> capital stock.  From the inception of its operations[,] its accounting records
> are kept and prepared in Quetzals, legal tender of the Republic of
> Guatemala[.]

Ex. G, p. 8 of the audit report.

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

service of the Writ, *see* Ex. F), in its Answer, BSI stated that it has a bank account in the name of Villamorey with an address in Panama and a mailing address in Guatemala. *See* Ex. H, ¶ 3. BSI also stated that a pledge was given by Villamorey, a Panamanian company doing business in Guatemala, to BSI for a loan to Inversiones (which is a British Virgin Islands ("BVI" company),[3] and that this loan is secured by the pledge given by Villamorey, giving BSI a perfected security interest in and claim to and ownership interest in the assets of Villamorey held at BSI, including but not limited to Villamorey's account at BSI. *See* Exs. H, K. BSI contends that as a result of the pledge agreement signed by Villamorey, if the Villamorey account represents a debt, it is a debt due to BSI, and if the Villamorey account represents property, it is property belonging to BSI. *See* Exs. H, K.

On April 24, 2017, BDT filed its Reply in support of the Writ, stating that the Villamorey account in the possession or control of BSI is property of Lisa. *See* Ex. G. BDT argues that neither the pledge agreement signed by Villamorey nor the promissory note, for which the pledge agreement was signed, provide a perfected security interest to BSI or a claim to or ownership interest in the Villamorey account by BSI. *See* Ex. G. Accordingly, BDT claims that Lisa has a claim or interest superior to BSI's claim in the Villamorey account, that if the Villamorey account represents a debt, it is a debt due to Lisa (and, therefore, subject to garnishment by BDT as the alleged judgment creditor), and that if the Villamorey account

---

[3] A redacted copy of the promissory note signed by Inversiones and the pledge agreement signed by Villamorey is attached hereto as **Composite Exhibit "K."** The promissory note and pledge agreement were produced to BDT in unredacted form, but they are being filed with the Court with certain identifying information redacted (in part, to comply with Rule 5.2 of the Federal Rules of Civil Procedure). Affidavits on behalf of Villamorey and Inversiones are also attached hereto as **Composite Exhibit "L."**

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

represents property, it is property belonging to Lisa (and, therefore, subject to garnishment by BDT).  *See* Exs. F, G.

### B.  Elements of a Removal Pursuant to the Edge Act

"Jurisdiction lies under the Edge Act if (a) the action is civil; (b) one of the parties is a federally chartered corporation; and (c) the suit arises out of either international banking or financial operations."  *Warter v. Boston Secs., S.A.*, No. 03-81026-CIV/RYSKAMP, 2004 WL 691787, at *5 (S.D. Fla. Mar. 22, 2004); *see also Pinto v. Bank One Corp.*, No. 02 Civ. 8477 NRB, 2003 WL 21297300, at *2 (S.D.N.Y. June 4, 2003); *First Nat'l Bank of Joliet v. Promatek Med. Sys., Inc.*, 870 F. Supp. 234, 237 (N.D. Ill. 1994); *Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) ("[I]n order for [the Edge Act] to apply (1) one of the parties to a suit must be a federally chartered corporation, and (2) the suit must arise out of a transaction involving international or foreign banking or financial operations.").  The State Action meets all three requirements for removal under the Edge Act.

### (1)  The State Action is a Civil Action

First, the State Action seeks to garnish the bank account at BSI in Villamorey's name to satisfy the Purported Foreign Judgment allegedly domesticated in Miami-Dade County against Lisa, because BDT contends Villamorey is holding monies owed to Lisa in Villamorey's BSI account.  *See* Exs. A, G, H.

A post-judgment writ of garnishment proceeding, like this one, is considered a civil suit and is removable.  *See Butler v. Polk*, 592 F.2d 1293, 1295-96 (5th Cir. 1979) (holding that a writ of garnishment was properly removed because garnishment actions against third parties are generally construed as independent civil suits); *see also Webb v. Zurich Ins. Co.*, 200 F.3d 759, 760 (11th Cir. 2000) (holding that a motion to remand was correctly denied after garnishee

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

removed garnishment proceedings to federal court, stating that such proceeding was considered a separate and independent civil action).

And more specifically, a post-judgment writ of garnishment proceeding is removable pursuant to the Edge Act (and is considered a suit of a civil nature). *Xyrous Commc'ns, LLC v. Bulgarian Telecomms. Co. AD*, No. 1:09-cv-396, 2009 WL 2877084, at \*2-3 (E.D. Va. Sept. 4, 2009). "Section 632 creates federal subject matter jurisdiction over all civil actions to which a Federal Reserve Bank is a party, and does not exclude civil actions based solely on a state statute." *Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1244 (11th Cir. 2000); *see also Hernandez Perez v. Citibank, N.A.*, 328 F. Supp. 2d 1374, 1377 (S.D. Fla. 2004) (holding that a "complaint" for a bill of discovery is a civil suit within the meaning of the Edge Act). Even though the Writ at issue here is based on the Florida Statutes, because this action is a civil suit where a Federal Reserve Bank or Edge Act Bank is a party, this Court has subject matter jurisdiction over this action. *See Thomas*, 220 F.3d at 1244. Therefore, this post-judgment writ of garnishment action is a suit of a civil nature under the Edge Act.

### (2)    BSI is a Bank Organized Under the Laws of the United States

Second, the Writ identifies BSI as the garnishee, and as such, BSI is considered a defendant for removal purposes. *See Jackson v. Hobart Enters., Inc.*, No. 8:06-cv-1759-T-30MAP, 2017 WL 1533836, at \*1 (M.D. Fla. Apr. 12, 2017) (garnishee in post-judgment garnishment proceeding is "garnishment defendant"); *see also Xyrous Commc'ns*, 2009 WL 2877084, at \*2-3 (holding that garnishee bank properly removed the post-judgment writ of garnishment proceeding pursuant to the Edge Act).

In addition, as an Edge Act corporation organized under Section 25A of the Federal Reserve Act (12 U.S.C. §§ 611-633), BSI is a corporation organized under the laws of the United

9

States.  *See* Declaration of Marco Prado, BSI's Chief Operations Officer, attached hereto as

**Exhibit "I."**

        **(3)**      **The State Action Arises Out of Transactions Involving International or Foreign Banking and International or Foreign Financial Operations**

Third, the State Action arises out of transactions involving international or foreign

banking, and international or foreign financial operations.

        **(i)**      **Banking activities**

"[A] suit satisfies the jurisdictional requisites of Section 632 if ***any part of it*** arises out of

transactions involving international or foreign banking." *See Warter*, 2004 WL 691787, at *5

(quoting *In re Lloyd's Am. Trust Fund Litig.*, 928 F. Supp. 333, 338 (S.D.N.Y. 1996) (emphasis

added)).   "Courts have held that wire transfers, maintaining deposits for customers, and

providing investment advice are banking activities." *Id.* at *6 (holding that Edge Act jurisdiction

existed because the facts underlying plaintiffs' claims, wire transfers, managing deposits, and

providing investment advice, constitute banking activities); *see also In re Lloyd's*, 928 F. Supp.

at 339 (holding that a dispute in which a bank, *inter alia*, maintained accounts, kept account

records, executed orders to transfer funds to and from accounts, and invested funds held in the

accounts constituted traditional banking activities); *Nacional Financiera v. Chase Manhattan

Bank, N.A.*, No. 00 CIV 1571 JSM, 2001 WL 327159, at *1, *4 (S.D.N.Y. Apr. 4, 2001) (bank's

alleged wrongful retention of mis-wired funds to set off another debt owed to it was a traditional

banking activity for purposes of Section 632).  Further, a loan is considered a traditional banking

activity under the Edge Act.  *See Contitrade Servs. Corp. v. Eddie Bauer, Inc.*, 794 F. Supp. 514,

517 (S.D.N.Y. 1992) (letter of credit issued by American bank to Canadian company is foreign

or international banking).

Here, there is no question that the State Action involves banking activities.  The basis for the State Action derives from BDT's allegations that deposits into the account of Villamorey (a wholly foreign entity) at BSI in Miami are subject to garnishment by BDT, which allegedly holds the Purported Foreign Judgment allegedly entered in Panama in favor of BDT, a Barbadian company, and against Lisa, a Panamanian company.  *See* Exs. A, B, F.  BDT seeks to garnish the bank account in the name of Villamorey, a Panamanian company doing business in Guatemala, held by BSI, an Edge Act bank, in Miami.  *See* Exs. A, F, G, H.  Central to this action are deposits made into Villamorey's BSI bank account, alleged to be declared dividends in the form of various certificates of deposit in favor of Lisa.  *See* Exs. A, F, G.  This action also arises from a pledge agreement signed by Villamorey in favor of BSI and a loan by BSI to Inversiones (a BVI company), that is secured and collateralized by Villamorey's pledge.  *See* Ex. G, H, K, L. That pledge agreement gives BSI a perfected security interest in and claim to and ownership interest in the assets of Villamorey held at BSI, including but not limited to Villamorey's account at BSI, a point that BDT disputes.  *See* Exs. G, H, K, L.  In its Reply, BDT challenges the pledge and alleges that a lien created by its service of the Writ on BSI trumps BSI's security interest created by the pledge and entitles BDT to execute on the collateral for BSI's loan to Inversiones. *See* Exs. G, K.

As a threshold matter, resolution of BDT's garnishment claim will require determination of the ownership of Villamorey's account at BSI and entitlement to the funds in it.  If BDT is able to overcome the significant hurdle of having to prove that the funds in Villamorey's account are property of or debts owed to Lisa (which both Villamorey and BSI dispute), resolution of BDT's claims in this action will require legal and factual determinations regarding (and therefore arising from), among other things:

(i) the account that BSI maintained for Villamorey, a Panamanian company doing business in Guatemala;

(ii) Villamorey's deposits in its account at BSI, which BDT alleges are declared dividends to be paid and distributed to Lisa, a Panamanian company, against which BDT, a Barbadian company, allegedly holds a judgment;

(iii) whether the Villamorey account at BSI is property of or a debt due to Villamorey (BSI's customer) or Lisa;

(iv) whether the funds in the Villamorey account are the property of or a debt due to Villamorey (BSI's customer) or Lisa;

(v) BSI's loan to Inversiones, a BVI entity;

(vi) Villamorey's pledge in favor of BSI as security and collateral for Inversiones's loan from BSI;

(vii) the Villamorey account, and all of the funds in it as security and collateral for BSI's loan to Inversiones;

(viii) BSI's perfected security interest in the Villamorey bank account;

(ix) the priority of BSI's perfected security interest over any lien created by BDT's Writ; and

(x) BDT's allegations that its Writ trumps BSI's security interest and entitles BDT to execute on the collateral for BSI's loan to Inversiones.

*See* Exs. A, G, H, K, L.

In sum, the State Action flows from a bank account for a foreign company doing business internationally, the management of that account, and the supervision of said account and transactions within same, along with a loan to a foreign entity and a pledge agreement with another foreign entity.  *See* Exs. A, G, H, K.  In other words, every legal and factual determination that must be made in this action arises out of banking activities.  Therefore, under

the authorities cited above, the allegations in the State Action involve traditional banking activities and international or foreign banking.[4]

**(ii)      International or foreign**

This prong of the test for Edge Act jurisdiction also requires that the action "aris[e] out of" transactions involving international or foreign banking.  *Hernandez Perez*, 328 F. Supp. 2d at 1378.  The term "arising out of" found in the Edge Act means originating from, flowing from, growing out of, incident to, or having a connection with.  *Id.* at 1378-79 (citing cases).[5]

More specifically, a suit satisfies the "international or foreign" requisites of section 632 if the suit arises out of "national banks engaging in banking activities with foreign companies." *Promatek Med. Sys.*, 870 F. Supp. at 237 (citing *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 792 (2d Cir. 1980) (holding the action arose out of international or foreign banking under the Edge Act because it was one involving a federally chartered bank that allowed a New York company to draw on a letter of credit belonging to a Venezuelan company's account)).  In other words, the "international or foreign" component of Edge Act jurisdiction exists if the suit originates from, flows from, grows out of, is incident to or has a connection to a national bank engaging in banking activities with a foreign company.  *See id.*; *Hernandez Perez*,

---

[4]  Additionally, although the action will have to be analyzed according to Florida's garnishment statutes, jurisdiction under the Edge Act nonetheless exists because foreign or international banking activities are involved.  *See Pinto*, 2003 WL 21297300, at *4 ("[T]he presence of state law issues does not divest federal courts of Edge Act jurisdiction so long as the foreign banking transactions are involved.").  Nor do causes of action sounding in contract alter the result.  *See ABA Int'l v. Citicorp USA*, No. CIV. A. No. H-87-2038, 1988 WL 30637, at *1 (S.D. Tex. Mar. 25, 1988) (finding federal jurisdiction under § 632 where the complaint alleged state law tort and contract claims).

[5]  The Eleventh Circuit has noted the broad nature of section 632 by citing to cases stating that Congress intended to grant federal jurisdiction to any civil suit in which a Federal Reserve Bank is a party.  *Thomas*, 220 F.3d at 1242-44 (holding that federal jurisdiction existed for civil suit involving Federal Reserve Bank even though action was premised solely on state statute).

13

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

328 F. Supp. 2d at 1378-79; *see also CI Int'l Fuels, Ltda. v. Helm Bank, S.A.*, 707 F. Supp. 2d 1351, 1354-55 (S.D. Fla. 2010) (denying motion to remand action by Colombian and Panamanian entities brought against removing bank, for claims arising from bank's alleged transfer of plaintiffs' monies out of their respective accounts into the accounts of Florida corporations purportedly without authorization); *Pinto*, 2003 WL 21297300, at *3 (transaction was foreign because some of the transactions involved a foreign bank); *In re Lloyd's*, 928 F. Supp. at 338 (suit involving London-based market for insurance, underwriters from all over the world although those named as plaintiffs were all citizens and residents of the United States, policyholders from all over the world, and U.S. bank maintaining the subject trust fund in the United States receiving directions from London, was international in nature).

Importantly, "[a] suit satisfies the jurisdictional requisites of [s]ection 632 **if any part of it** arises out of transactions involving international or foreign banking." *In re Lloyd's*, 928 F. Supp. at 338 (citations omitted) (emphasis added).

In *First National Bank of Joliet v. Promatek Medical Systems, Inc.*, the court denied a motion to remand and held that Edge Act jurisdiction existed. 870 F. Supp. at 238. There, a foreign corporation furnished an American bank with a letter of credit issued through a foreign banking institution. *Id.* In finding a sufficient basis for Edge Act jurisdiction, the court in *Promatek* found it even more persuasive that a foreign institution issued the letter of credit, beyond the fact that the letter of credit was issued to a foreign company, suggesting that the court may still have found Edge Act jurisdiction based solely on the involvement of a foreign corporation in the absence of a foreign institution issuing the letter of credit. *Id.*

Similarly, in *Contitrade Services Corp. v. Eddie Bauer, Inc.*, the court denied a motion to remand and held that Edge Act jurisdiction existed. 794 F. Supp. at 517. In that case, a United

14

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

States company sued a United States bank regarding two letters of credit issued to a Canadian company and other letters of credit issued to a related American company. *Id.* at 514-517. The court in *Contitrade* held that section 632 conferred jurisdiction on the district court over suits arising out of "national banks engaging in banking activities with foreign companies." *Id.* at 517. There, the court held that two letters of credit issued by a United States bank in favor of a foreign, Canadian company was enough to satisfy the international or foreign banking requisite under the Edge Act. *Id.* The court dismissed plaintiff's purely-domestic-transaction argument (that only American companies and an American bank were involved in the transactions) because two of the letters of credit were issued in favor of a foreign company, even though other letters of credit were issued in favor an American company. *Id.*

In this action, the jurisdictional requisites of section 632 are met. Although the test is only whether at least part of this dispute involves international or foreign banking, and the action originates from or is connected to a national bank engaging in banking activities with foreign companies, s*ee Hernandez Perez*, 328 F. Supp. 2d at 1378-79; *In re Lloyd's*, 928 F. Supp. at 338; *Promatek Med. Sys.*, 870 F. Supp. at 237, in this action, the dispute is wholly based upon (and its determination turns upon) international or foreign banking and a national bank engaging in banking activities with foreign companies.

As set forth above, the allegations in the Writ, Answer, and Reply arise from, relate to, and implicate, among other things:

(i) the account that BSI maintained for Villamorey, a Panamanian company doing business in Guatemala;

(ii) Villamorey's deposits in its account at BSI, which BDT alleges are declared dividends to be paid and distributed to Lisa, a Panamanian company, against which BDT, a Barbadian company, allegedly holds a judgment;

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

(iii) whether the Villamorey account at BSI is property of or a debt due to Villamorey (BSI's customer) or Lisa;

(iv) whether the funds in the Villamorey account are the property of or a debt due to Villamorey (BSI's customer) or Lisa;

(v) BSI's loan to Inversiones, a BVI entity;

(vi) Villamorey's pledge in favor of BSI as security and collateral for Inversiones's loan from BSI;

(vii) the Villamorey account, and all of the funds in it as security and collateral for BSI's loan to Inversiones;

(viii) BSI's perfected security interest in the Villamorey bank account;

(ix) the priority of BSI's perfected security interest over any lien created by BDT's Writ; and

(x) BDT's allegations that its Writ trumps BSI's security interest and entitles BDT to execute on the collateral for BSI's loan to Inversiones.

*See* Exs. A, G, H, K, L.

Simply put, like *Promatek* and *Contitrade*, this action arises out of international or foreign banking because the action originates from or is connected to a national bank, BSI, engaging in banking activities, such as opening, accepting deposits in, and maintaining a bank account for Villamorey, including maintenance of deposits BDT claims are held for the benefit of Lisa (a Panamanian company), entering into a pledge agreement with a foreign company, (Villamorey, a Panamanian company doing business in Guatemala), and loaning money to another foreign entity, Inversiones (a BVI company). *See* Exs. A, G, H, K.

Although merely having a United States Edge Act bank and foreign company involved satisfies the requirements of section 632, s*ee Corporacion Venezolana de Fomento*, 629 F.2d at 792; *Promatek Med. Sys.*, 870 F. Supp. at 237; *Contitrade*, 794 F. Supp. at 517, in this action, the international and foreign bases and implications of the claims far exceed those minimal

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

requirements.  This action thus meets the international or foreign requirement of section 632.  *See Promatek Med. Sys.*, 870 F. Supp. at 237; *Contitrade*, 794 F. Supp. at 517.  As a result, the Court has jurisdiction under the Edge Act, and this action is properly removed.

### (iii)   Financial Operations

Even assuming *arguendo* that the State Action did not involve international banking activities – and it does without question – removal to this Court also is appropriate, because the State Action involves international or foreign financial operations.  *See Warter*, 2004 WL 691787, at *8.  This alternative prong of the test for Edge Act jurisdiction, similar to the prong requiring international or foreign banking, requires that the action "aris[e] out of transactions involving . . . other international or foreign financial operations."  12 U.S.C. § 632; *see also Hernandez Perez*, 328 F. Supp. 2d at 1378 (quoting same from the Edge Act).  The term "arising out of" found in the Edge Act means originating from, flowing from, growing out of, incident to, or having a connection with.  *Id.* at 1378-79 (citing cases).  Under this part of the Edge Act analysis, there is no doubt that the State Action arises out of, or is incident to, or has a connection with international or foreign financial operations.

The State Action, which seeks to garnish funds held in Villamorey's account at BSI, which contains foreign deposits that are subject to a pledge agreement signed by a Panamanian company doing business in Guatemala, as security and collateral for a loan given to another foreign entity, falls squarely within a district court's Edge Act jurisdiction as involving "financial operations."  *See Stamm*, 1996 WL 614087, at *2 (describing "financial operations" as a "general statutory category"); *In re Lloyd's*, 928 F. Supp. at 341 (finding that "[e]ven if the transactions in question here do not constitute banking proper . . . they surely fall within the ambit of the 'financial operations' contemplated by the statute").  Financial operations cover a broad range of

17

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

transactions, and certainly include maintaining deposits (deposited by foreign entities and which BDT alleges are declared dividends held for the benefit of Lisa) and account records of a foreign company (Villamorey) at an international bank doing business in Miami (BSI).  *See* Exs. A, B, F, G, H.  Financial operations also necessarily include a loan from an international bank doing business in Miami (BSI) to a foreign entity (Inversiones) for which a pledge agreement was given by Villamorey, a Panamanian company doing business in Guatemala, as collateral for said loan to Inversiones.  *See* Exs. A, G, H, K, L.  For example, the court in *In re Lloyd's* reasoned that Citibank's activities – specifically, maintaining deposits in accounts; keeping records for those accounts; executing orders to transfer funds from those accounts – even if not considered banking transactions (which the *Lloyd's* court held they were, *see supra*), constituted "financial operations."  928 F. Supp. at 339, 341.

### C.   The Removal is Timely

This Notice of Removal is timely filed under 12 U.S.C. § 632, which permits removal at any time before trial.  *See* 12 U.S.C. § 632; *see also Magel v. Fed. Reserve Bank of Phila.*, 776 F. Supp. 200, 202 (E.D. Pa. 1991) (Section 632 allows removal at any time before trial).[6]  The State Action was filed on February 27, 2017 (when the Purported Foreign Judgment was filed), the Writ was served on BSI on March 17, 2017, BSI's answer and claim were filed on April 5, 2017,

---

[6]  Cases removed pursuant to the Edge Act do not have to be removed within 30 days of service of process as proscribed by 28 U.S.C. § 1446(b).  *See  Hill v. Citicorp*, 804 F. Supp. 514, 515-16 (S.D.N.Y. 1992) ("[T]he time limit set forth in section 632 'before the trial,' would be rendered almost meaningless if the thirty-day limit from section 1446 were incorporated."); *CI Int'l Fuels*, 707 F. Supp. 2d at 1354-55 ("[T]he rule of unanimity, which is part of the removal procedure of 28 U.S.C. § 1446(a) . . . is not part, at least with regard to section 632, of 'the procedure for the removal of causes otherwise provided by law.'  That is because section 632 *itself* resolves the question of who can effect removal.  And where a special removal statute provides a specific procedure, that procedure, not the procedure for removal of 28 U.S.C. § 1446, controls." (citations omitted)).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

and BDT's reply was served on April 24, 2017.  There has been no action on the merits, and it is not currently set for trial.  Moreover, an approximate eight-month stay of the case was only recently lifted after Villamorey's appeal of a discovery order (the stay was entered in October 2017 and was lifted on May 4, 2018, when the mandate issued from the appellate court).  And, although the parties have exchanged written discovery (and objections thereto), no depositions have been taken, and this case is still in its infancy.  Because trial has not yet commenced in the State Action, this Notice of Removal is timely filed.  *See* 12 U.S.C. § 632.

        **D.**      **The Removal is Appropriate**

BSI as the garnishee defendant, has the right to remove this action under 12 U.S.C. § 632. *See* 12 U.S.C. § 632 (allowing any defendant to remove); *see also Xyrous Commc'ns*, 2009 WL 2877084, at *2 n.4, 2-3 (holding removal proper and that the court had subject matter jurisdiction under the Edge Act when action was removed by garnishee, an Edge Act bank).  Further, pursuant to 28 U.S.C. § 1446(a), attached to this Notice of Removal as **Composite Exhibit "J"** are all process, pleadings[7], and orders served upon BSI in the State Action, consisting of: a copy of the docket; Purported Foreign Judgment; BDT's Counsel's Affidavit; Notice of Recording of Purported Foreign Judgment; Certificate of No Objection by Lisa; Motion for Issuance of Post Judgment Writ of Garnishment; Writ of Garnishment; proof of service of Writ of Garnishment as to BSI; BSI's Answer to the Writ of Garnishment; BDT's reply in support of the Writ of Garnishment; BSI's Motion to Dissolve the Writ of Garnishment; Villamorey's Motion to Dissolve the Writ of Garnishment; and Villamorey's Motion to Quash and for Protective Order

---

[7]  Pleadings in a writ of garnishment proceeding include the writ of garnishment, the answer to the writ of garnishment, and the reply to the writ of garnishment.  *See Fla. Power & Light Co. v. Crabtree Constr. Co.*, 283 So. 2d 570, 572 (Fla. 4th DCA 1973) (holding that garnishee's answer to a writ of garnishment is a pleading and allowing amendment of same).

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

as to Discovery Propounded by Judgment Creditor.  Moreover, pursuant to 28 U.S.C. § 1446(d), BSI will file a copy of this Notice of Removal with the circuit court in the State Action (the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida), and is giving written notice thereof to all parties that have appeared in the State Action.

## III.    CONCLUSION

For all the foregoing reasons, Garnishee BANCO SANTANDER INTERNATIONAL hereby removes the action entitled *BDT Investments, Inc. v. Lisa S.A.*, Case No. 2017-4616-CA-10, filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to this Court.

Respectfully submitted,

Gunster, Yoakley & Stewart, P.A.
*Attorneys for Garnishee*
*Banco Santander International*
600 Brickell Avenue
Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile:  (305) 376-6010

By: */s/ Clinton R. Losego*
    Clinton R. Losego
    FBN: 818054
    closego@gunster.com
    Jorge Guttman
    FBN: 15319
    jguttman@gunster.com
    Stephanie L. Turk
    FBN: 99138
    sturk@gunster.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**

is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Clinton R. Losego*
Clinton R. Losego

## SERVICE LIST

David M. Levine, Esq.
Juan J. Rodriguez, Esq.
Ernesto M. Rubi, Esq.
Amy Bowers-Zamora, Esq.
Carey Rodriguez Milian Gonya LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Tel: 305.372.7474
Fax: 305.372.7475
jrodriguez@careyrodriguez.com
erubi@careyrodriguez.com
dlevine@careyrodriguez.com
abowers@careyrodriguez.com
*Counsel for Judgment Creditor BDT Investments, Inc.*

Allan A. Joseph, Esq.
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, Suite 3112
Miami, FL 33131
Tel: 305.350.5690
Fax: 305.371.8989
ajoseph@fuerstlaw.com
avillena@fuerstlaw.com
*Counsel for Judgment Debtor Lisa S.A.*

Annette C. Escobar, Esq.
Sequor Law, P.A.
1001 Brickell Bay Drive, 9th Floor

**GUNSTER**
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

Miami, FL  33131
Tel: 305.372.8282
Fax: 305.372.8202
Aescobar@sequorlaw.com
edavis@sequorlaw.com
*Counsel for Villamorey, S.A.*

MIA_ACTIVE 4745119.1

**GUNSTER**
**PROFESSIONAL ASSOCIATION**
**ATTORNEYS AT LAW**