UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-22005-Civ-COOKE/GOODMAN

BDT INVESTMENTS, INC.,

    Judgment Creditor,

vs.

LISA, S.A.,

    Judgment Debtor,

BANCO SANTANDER INTERNATIONAL,

    Garnishee.
_____/

**BANCO SANTANDER INTERNATIONAL'S**
**VERIFIED MOTION FOR COSTS AND EXPENSES**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii
VERIFIED MOTION ............................................................................................................. 1
INTRODUCTION .................................................................................................................. 1
RELEVANT BACKGROUND .............................................................................................. 1
ARGUMENT .......................................................................................................................... 4
    I.    BSI HAS PROVIDED THE INFORMATION REQUIRED BY LOCAL RULE 7.3(a). ................................................................................................... 5
    II.   BSI'S ATTORNEY'S FEES WERE REASONABLE. ........................................... 10
CONCLUSION .....................................................................................................................12
CERTIFICATION OF ATTEMPTED GOOD-FAITH CONFERENCE ........................13
VERIFICATION ...................................................................................................................13
CERTIFICATE OF SERVICE ............................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Domond v. PeopleNetwork APS*,
    750 F. App'x 844 (11th Cir. 2018) ........................................................................10

*Kleiman v. Wright*,
    Case No. 18-80176-CV-Bloom/Reinhart (S.D. Fla. Mar. 17, 2020) .........................11

*Norman v. Hous. Auth. of City of Montgomery*,
    836 F.2d 1292 (11th Cir. 1988) ................................................................................10

*Parrot Inc. v. NiceStuff Distrib. Int'l, Inc.*,
    No. 06-61231-CIV, 2010 WL 680948 (S.D. Fla. Feb. 24, 2010) ..............................11

*PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*,
    Case No. 1:18-CV-20818-GAYLES/OTAZO-REYES (S.D. Fla. Mar. 2, 2020) .....11

*Seagrave v. State*,
    802 So. 2d 281 (Fla. 2001) ......................................................................................... 4

*Suntrust Bank v. Arrow Energy, Inc.*,
    199 So. 3d 1026 (Fla. 4th DCA 2016) ................................................................ 4, 12

*Zelaya/Capital Int'l Judgment, LLC v. Zelaya*,
    769 F.3d 1296 (11th Cir. 2014) ................................................................................. 4

**Statutes & Rules**

12 U.S.C. § 632 ..................................................................................................................... 2

Fed. R. Civ. P. 69(a)(1) ......................................................................................................... 4

Fla. Stat. § 77.28 ............................................................................................................ *passim*

S.D. Fla. R. 7.3(a) ................................................................................................................. 5

S.D. Fla. R. 7.3(c) ................................................................................................................. 6

## VERIFIED MOTION

Garnishee Banco Santander International ("BSI") respectfully moves for an award of its costs, expenses, and attorney's fees pursuant to Section 77.28, Florida Statutes, and Local Rule 7.3(a).

## INTRODUCTION

As Magistrate Judge Goodman previously recognized, this was "anything but [a] standard or typical" garnishment proceeding.  (ECF No. 327 at 1.)  The parties fiercely litigated the validity of the underlying foreign judgment, ownership of the property at issue, whether Plaintiff BDT Investments, Inc.'s ("BDT") writ of garnishment had dissolved, BDT's entitlement to a new writ, and a host of discovery disputes concerning evidence of, among other things, the relationship between BDT and Defendant Lisa, S.A. ("Lisa"), their common ownership, and the genuineness of the debt Lisa allegedly owed to BDT.  To date, the litigation has generated nearly 400 docket entries, not including any of the state court docket entries preceding (and in some instances following) removal of the action to this Court.

This motion, by contrast, is simple and straightforward.  Florida law requires this Court to determine Garnishee Banco Santander International's ("BSI") costs and expenses—including a reasonable attorney's fee—and award those costs and expenses to BSI.  BSI's attorney's fees are reasonable, and this Court's mandatory award of costs and expenses should include the full amount of BSI's attorney's fees.

## RELEVANT BACKGROUND

BDT sued Lisa on a promissory note in Panama on April 17, 2012.  (ECF No. 214 ¶ 10; ECF No. 310 ¶ 10.)  Lisa, a BDT affiliate, did not defend itself and, on May 31, 2012, a Panamanian court ordered Lisa to pay BDT $19,184,680—the promissory note's entire principal of $16,685,000, plus $2,499,680 in costs and expenses (the "Panama Judgment"). (ECF No. 214 ¶ 10; ECF No. 310 ¶ 11.)

On February 27, 2017, BDT filed an action in Florida state court against Lisa to domesticate the Panama Judgment.  (ECF No. 211 ¶ 25; ECF No. 237 ¶ 25.)  On March 10, 2017, the state court clerk recorded the Panama Judgment.  (*Id.*)  On March 14, 2017, BDT filed a Motion for Post Judgment Writ of Garnishment against BSI.  (ECF No. 211 ¶ 26.)

1

The Court issued the writ of garnishment against BSI (the "Writ") on March 17, 2017, and BDT served the Writ on BSI that same day.[1] (ECF No. 1-1; ECF No. 310 ¶ 32.)

On April 5, 2017, BSI filed its answer and claim, in which it denied having any property of Lisa in its possession or control or owing any debts to Lisa. (ECF No. 1-8.) BSI also confirmed that it has a bank account in the name of interested party Villamorey, S.A. ("Villamorey"), and asserted that, by virtue of a pledge Villamorey had made in connection with an affiliate's loan, BSI held a perfected security interest in, claim to, and ownership interest in Villamorey's assets. (*Id.*) BSI also demanded its attorney's fees and costs. (*Id.*) On April 24, 2017, BDT served its reply to BSI's answer and denied BSI's allegations. (ECF No. 1-7.)

On May 1, 2018, BSI moved to dissolve the Writ on procedural grounds and on the ground that BSI does not owe Lisa any debt or have possession or control over Lisa's personal property. (ECF No. 1-10 at 120–75.) Villamorey also moved to dissolve the Writ. (ECF No. 1-10 at 176–287.) BDT opposed both motions.[2]

The parties proceeded to discovery on a parallel track. BSI served several requests for admissions, requests for production, and interrogatories on BDT and Lisa and noticed the depositions of their corporate representatives. BSI also filed briefing pertaining to discovery, including a motion to preclude BDT from introducing or relying on evidence it had refused to produce in response to BSI's discovery requests and a motion to strike BDT's expert disclosure and to preclude its purported expert from testifying.

On October 9, 2017, Florida's Third District Court of Appeal stayed trial court proceedings during the pendency of an appeal concerning BDT's entitlement to discovery from Villamorey. (ECF No. 155-2.) On May 18, 2018, after the Third District Court of Appeal lifted its stay, BSI removed this action to this Court under the Edge Act, 12 U.S.C. § 632. (ECF No. 1.) BDT then moved for remand, which BSI opposed. (ECF No. 14, ECF No. 24.) After a hearing, this Court denied BDT's motion for remand. (ECF No. 102.)

---

[1] On August 31, 2017, BDT extended the Writ until March 17, 2018. (ECF No. 155-1.) On October 9, 2018, BDT purported to extend the Writ by an additional six months. (ECF No. 155-5.)

[2] The state court did not rule on either motion.

2

BSI propounded additional requests for admission, requests for production, and interrogatories on BDT and Lisa. BDT and Lisa objected to virtually all of BSI's requests for discovery. Resolution of the resulting disputes required extensive negotiations among the parties and at least five hearings before Magistrate Judge Goodman (with BSI prevailing on virtually all unresolved disputes). (*See, e.g.*, ECF No. 176, ECF No. 195.) Counsel for BSI then took the depositions of corporate representatives of BDT and Lisa.

BSI produced thousands of pages of discovery to BDT subject to a confidentiality order and produced a corporate representative and two expert witnesses (retained by Villamorey) for deposition. BSI objected to a number of BDT's requests for discovery, however, and the parties twice appeared before Magistrate Judge Goodman to address the proper scope of discovery requests directed to BSI. (*See, e.g.*, ECF No. 191.) BSI was also compelled to move for sanctions, including dismissal with prejudice, and other relief after learning BDT had committed what Magistrate Judge Goodman later described as "troubling" violations of the Court's confidentiality order. (ECF No. 44, ECF No. 150 at 2.)

Having concluded that BDT's Writ had dissolved automatically under Florida law, BSI moved for judgment on the pleadings on May 17, 2019. (ECF No. 155.) Rather than acknowledge the dissolution of its Writ, BDT opposed BSI's motion and insisted its Writ had not dissolved while simultaneously pursuing new writs of garnishment in the state court and from this Court. (ECF No. 159, ECF No. 192, ECF No. 197.) Ultimately, this Court correctly ruled that the Writ had dissolved automatically and that neither the state court nor this Court could issue a new writ—but not before BDT's actions compelled BSI to obtain a writ enjoining further state court proceedings and declaring a new state court issued writ to be void, to oppose BDT's motion for reconsideration of the writ enjoining state court proceedings, and to oppose BDT's (admittedly meritless) motion for a writ of garnishment issued by this Court. (ECF No. 327, ECF No. 367.)

At the conclusion of discovery, BSI, Villamorey, and BDT each moved for summary judgment. (ECF No. 212, ECF No. 215, ECF No. 218.) BSI filed briefing and detailed affidavits in support of its motion and in opposition to BDT's motion. (ECF Nos. 210–12, ECF No. 232, ECF No. 272.) Counsel for BSI then prepared for and participated in two days of oral argument before Magistrate Judge Goodman concerning BSI's motion for

judgment on the pleadings, the parties' motions for summary judgment, BDT's motion for reconsideration of the writ enjoining state court proceedings, and BDT's motion for this Court to issue a new writ of garnishment. (*See* ECF No. 327.) After Magistrate Judge Goodman issued his reports and recommendations concerning these motions, BSI briefed its objections and its responses to BDT's objections. (ECF No. 344, ECF No. 354.)

While the parties' motions and, later, objections to Magistrate Judge Goodman's reports and recommendations were pending, BSI prepared for trial, drafting and filing the joint pre-trial stipulation and its own proposed voir dire, witness list, exhibit list, objections to BDT's exhibit list, deposition designations and objections, proposed jury instructions, proposed verdict form, motions in limine, and responses to BDT's motions in limine. (*See, e.g.*, ECF Nos. 310–11, ECF Nos. 328–30, ECF No. 338.) Once the Court adopted Magistrate Judge Goodman's reports and recommendations, BSI's counsel filed a bench memorandum explaining why BDT's requests that the Court remand this action and lift the injunction enjoining state court proceedings would be premature. (ECF No. 379.)

BSI made a good-faith effort to meet and confer with BDT in accordance with this Court's Local Rules and now moves for its costs and expenses, including its reasonable attorney's fees.

## ARGUMENT

Florida law[3] provides that, after rendering a final judgment on a writ of garnishment, a "court <u>shall</u> determine the garnishee's costs and expenses, including a reasonable attorney fee," and "<u>shall</u> tax the garnishee's costs and expenses as costs." Fla. Stat. § 77.28 (emphases added).[4] Indeed, Florida's garnishment "statutes contemplate that the garnishee will have <u>no liability or out-of-pocket expense</u> due to the garnishment." *Suntrust Bank v. Arrow Energy, Inc.*, 199 So. 3d 1026, 1028 (Fla. 4th DCA 2016) (emphasis added). BSI's

---

[3] "The procedure on" this garnishment proceeding "must accord with the procedure of" Florida. *See* Fed. R. Civ. P. 69(a)(1).

[4] The Eleventh Circuit has rejected the proposition that only disinterested or "innocent stakeholder" garnishees are entitled to their costs, expenses, and attorney's fees. *Zelaya/Capital Int'l Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1305 (11th Cir. 2014) ("Nothing in § 77.28 or any other section of Florida's garnishment statute requires such a determination."). *See also Seagrave v. State*, 802 So. 2d 281, 287 (Fla. 2001) ("[I]it is a basic principle of statutory construction that courts 'are not at liberty to add words to statutes that were not placed there by the Legislature.'").

4

entitlement to its costs, expenses, and reasonable attorney's fees is therefore beyond dispute. BSI's attorney's fees were reasonable, and this Court should award BSI $1,201,141.73, the sum of its costs, expenses, and attorney's fees.

## I. BSI HAS PROVIDED THE INFORMATION REQUIRED BY LOCAL RULE 7.3(a).

Local Rule 7.3(a) requires (1) that a motion for attorney's fees and expenses be timely filed and served, (2) an identification of the judgment or other order which gives rise to the motion, as well as the statute, rule, or other grounds entitling the movant to the award, (3) a statement of the amount sought, (4) disclosure of the terms of any applicable fee agreement, (5) the identity and credentials of each timekeeper, the number of hours billed by each timekeeper, a description of each timekeeper's tasks, and each timekeeper's hourly rate, and (6) a description of all incurred and claimed fees and supporting invoices. S.D. Fla. R. 7.3(a). BSI provides this information herein.[5]

First, the motion for attorney's fees and expenses must be timely filed and served. S.D. Fla. R. 7.3(a)(1). By rule, BSI's original deadline was April 28, 2020, *i.e.*, within 60 days of the entry of the Final Judgment (ECF No. 382) on February 28, 2020. *See* S.D. Fla. R. 7.3(a)(1). After BDT's counsel withdrew and BDT obtained extensions of time to retain new counsel and respond to BSI's draft of this motion (*see, e.g.*, ECF No. 397), the Court set a new deadline of June 12, 2020, for BSI to file this motion. (ECF No. 399.) As today is June 10, 2020, the motion is timely.

Second, the motion must identify the judgment or other order which gives rise to the motion, as well as the statute, rule, or other grounds entitling the movant to the award. The judgment giving rise to this motion is the Court's Final Judgment in favor of BSI (ECF No. 382), entered February 28, 2020. The statute entitling BSI to its attorney's fees and expenses is Section 77.28, Florida Statutes. As noted above, Section 77.28 requires this Court to award BSI, as garnishee, its costs, expenses, and reasonable attorney's fees "[o]n rendering final judgment." Fla. Stat. § 77.28.

---

[5] Local Rule 7.3(a) also requires verification of the motion and a certification that a good faith effort to resolve issues by agreement occurred pursuant to Local Rule 7.3(b), describing what was and was not resolved by agreement and addressing separately the issues of entitlement to fees and amount. The required verification and certification are included below.

5

Third, the motion must state the amount sought. BSI seeks a total of $1,201,141.73, through March 15, 2020, which includes $1,182,475.30 in attorney's fees and $18,666.43 in other non-taxable expenses and costs.[6]

Fourth, the motion must disclose the terms of any applicable fee agreement. Counsel to BSI ("Gunster") renders legal services to BSI pursuant to Gunster's master engagement letter with, and guidelines for outside counsel issued by, Santander Holdings USA, Inc. ("Santander"), which is BSI's parent company. (Losego Aff. ¶ 3.) Gunster charged BSI its standard hourly rates from March 2017 through March 2018. (*Id.*) As of April 2018, Gunster and BSI agreed to the following maximum rates (which are memorialized in an attachment to Santander's current engagement letter): $600 per hour for attorney Clinton R. Losego, $540 per hour for other Gunster shareholders, $405 per hour for associates, $315 per hour for of counsel attorneys, and $234 per hour for paralegals and legal assistants. (Losego Aff. ¶ 4.) If Santander and its U.S. affiliates collectively pay Gunster more than $100,000 in legal fees in a given year, Gunster also provides a discount of between two and seven percent. (Losego Aff. ¶ 5.)

Fifth, the motion must provide (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought; (B) the number of hours reasonably expended by each such timekeeper; (C) a description of the tasks done during those hours; and (D) the hourly rate(s) claimed for each timekeeper. BSI seeks reimbursement for work performed by Clinton R. Losego, Timothy J. McGinn, Jorge D. Guttman, Mahesh H. Nanwani, Angel A. Cortiñas, Jonathan H. Kaskel, Stephanie Turk, Anaili Cure, John W. Terwilleger, Joshua A. Levine, Jacqueline Z. DerOvanesian, Jack J. Aiello, Frederick E. Owens, Mark Workman, Karen K. Castillo, and Michelle L. Albrecht. (Losego Aff. ¶ 6.)

(1) Clinton R. Losego is a shareholder at Gunster. (Losego Aff. ¶ 9.) Mr. Losego graduated from the University of Miami School of Law *cum laude* and as a member of the Order of the Coif in 1989. (*Id.*) He was admitted to the Florida Bar in 1989 and has been recognized as a member of the "Legal Elite" by *Florida Trend* in each of the last nine

---

[6] BSI has filed a separate bill of costs addressing its taxable costs pursuant to Local Rule 7.3(c). (ECF No. 389.) To the extent the Court concludes any of the costs identified in BSI's bill of costs are not properly taxable, the Court should award those costs to BSI pursuant to Section 77.28, Florida Statutes, and Local Rule 7.3(a).

years.[7] (*Id.*) Through March 15, 2020, Mr. Losego has billed 811.3 hours to this matter, during which time he served as BSI's lead counsel and chief strategist, drafted and argued numerous motions, and coordinated and supervised all other Gunster work product.[8] (*Id.*) Mr. Losego's hourly rate was $600 per hour except during the first quarter of 2018, when his hourly rate was $625 per hour. (*Id.*)

(2)    Timothy J. McGinn is a shareholder at Gunster. (Losego Aff. ¶ 10.) Mr. McGinn graduated from Duke University School of Law in 2009. (*Id.*) He was admitted to the New York Bar in 2010 and the Florida Bar in 2017. (*Id.*) Through March 15, 2020, Mr. McGinn has billed 835.8 hours to this matter, during which time he principally researched and drafted numerous motions and legal memoranda, including BSI's briefing concerning its motion for judgment on the pleadings and each party's motion for summary judgment. (*Id.*) Mr. McGinn's hourly rate was $405 per hour through January 2020; Mr. McGinn was promoted to shareholder effective February 1, 2020, at which time his hourly rate increased to $485 per hour. (*Id.*)

(3)    Jorge D. Guttman is a shareholder at Gunster. (Losego Aff. ¶ 11.) Mr. Guttman graduated from the University of Miami School of Law *cum laude* in 2005. (*Id.*) He was admitted to the Florida Bar in 2005 and has been recognized as a member of the "Legal Elite" by *Florida Trend*. (*Id.*) Mr. Guttman has billed 174 hours to this matter, during which time he principally conducted discovery and litigated discovery disputes. (*Id.*) Mr. Guttman's hourly rate was $495 per hour in 2017, $515 per hour in 2018, and $540 per hour thereafter. (*Id.*)

(4)    Mahesh H. Nanwani is a shareholder at Gunster. (Losego Aff. ¶ 12.) Mr. Nanwani graduated from Georgetown University Law Center in 1987. (*Id.*) He was

---

[7] A detailed recitation of each Gunster attorney's credentials, including representative matters and honors received, excluding attorney Anaili Cure, who left the firm several years ago, is submitted herewith. (Losego Aff. Ex. A.)

[8] Exhibit B to Mr. Losego's affidavit includes each Gunster timekeeper's narrative descriptions of the tasks performed during the hours billed. Local Rule 7.3(a) expressly provides that its disclosure requirements are not intended to require the disclosure of privileged, immune, or protected material. S.D. Fla. R. 7.3(a). For that reason, BSI has made appropriate redactions to the narratives of the work performed by its timekeepers. If necessary, BSI is prepared to submit its unredacted timekeeper narratives to the Court *ex parte* and under seal for *in camera* review.

admitted to the Florida Bar in 1988. (*Id.*) Mr. Nanwani billed 16 hours to this matter, during which time he principally offered legal advice regarding the BSI loan that was secured by the pledge of Villamorey's account at the bank. (*Id.*) Mr. Nanwani's hourly rate was $540 per hour. (*Id.*)

(5) Angel A. Cortiñas is a shareholder at Gunster. (Losego Aff. ¶ 13.) Mr. Cortiñas graduated from Harvard Law School *cum laude* in 1987, and he was admitted to the Florida Bar in 1989. (*Id.*) Mr. Cortiñas served as an appellate judge on Florida's Third District Court of Appeal from 2005 to 2013. (*Id.*) He billed 2.1 hours to this matter, during which time he principally offered legal advice regarding the initial state court proceedings. His hourly rate was $725 per hour. (*Id.*)

(6) Jonathan H. Kaskel is a shareholder at Gunster. (Losego Aff. ¶ 14.) Mr. Kaskel graduated from the University of Florida's Levin College of Law *cum laude* in 2007. (*Id.*) He was admitted to the Florida Bar in 2008. (*Id.*) Mr. Kaskel billed 0.3 hours to this matter, during which time he offered legal advice regarding the dissolution of BDT's Writ. (*Id.*) Mr. Kaskel's hourly rate was $475 per hour. (*Id.*)

(7) Stephanie Turk is a former Gunster associate. (Losego Aff. ¶ 15.) Ms. Turk graduated from Stetson University College of Law *cum laude* in 2012. (*Id.*) She was admitted to the Florida Bar in 2012. (*Id.*) Ms. Turk billed 436.4 hours to this matter, during which time she principally drafted and responded to discovery requests, analyzed discovery, litigated discovery disputes, and researched and drafted legal memoranda and Court filings. (*Id.*) Ms. Turk's hourly rate was $375 per hour in 2018 and $400 per hour thereafter. (*Id.*)

(8) Anaili M. Cure is a former Gunster associate. (Losego Aff. ¶ 16.) Ms. Cure graduated from the University of Miami School of Law *magna cum laude* and as a member of the Order of the Coif in 2015. (*Id.*) She was admitted to the Florida Bar in 2015. (*Id.*) Ms. Cure billed 65.5 hours to this matter, during which time she principally responded to discovery requests, prepared privilege logs, and conducted legal research. (*Id.*) Ms. Cure's hourly rate was $300 per hour in 2017 and $325 per hour thereafter. (*Id.*)

(9) John W. Terwilleger is a Gunster associate. (Losego Aff. ¶ 17.) Mr. Terwilleger graduated from the University of Florida's Levin College of Law *summa cum laude* in 2013. (*Id.*) He was admitted to the Florida Bar in 2013. (*Id.*) Mr. Terwilleger

billed 27.9 hours to this matter, during which time he principally conducted legal research. (*Id.*) Mr. Terwilleger's hourly rate was $405 per hour. (*Id.*)

(10) Joshua A. Levine is a Gunster associate. (Losego Aff. ¶ 18.) Mr. Levine graduated from the University of Miami School of Law *summa cum laude* and as a member of the Order of the Coif in 2013. (*Id.*) He was admitted to the Florida Bar in 2013. (*Id.*) Mr. Levine billed 6.6 hours to this matter, during which time he principally conducted legal research. (*Id.*) Mr. Levine's hourly rate was $350 per hour. (*Id.*)

(11) Jacqueline Z. DerOvanesian is a former Gunster associate. (Losego Aff. ¶ 19.) Ms. DerOvanesian graduated from George Washington University Law School with honors in 2016. (*Id.*) She was admitted to the Florida Bar in 2016. (*Id.*) Ms. DerOvanesian billed two hours to this matter, during which time she principally conducted legal research. (*Id.*) Ms. DerOvanesian's hourly rate was $350 per hour. (*Id.*)

(12) Jack J. Aiello is of counsel at Gunster. (Losego Aff. ¶ 20.) Mr. Aiello graduated from the University of Florida College of Law with high honors in 1984. (*Id.*) He was admitted to the Florida Bar in 1984. (*Id.*) Through March 15, 2020, Mr. Aiello has billed 0.3 hours to this matter, during which time he has offered advice concerning appellate issues. (*Id.*) Mr. Aiello's hourly rate was $315 per hour. (*Id.*)

(13) Frederick E. Owens is an attorney and electronic discovery project manager at Gunster. (Losego Aff. ¶ 21.) Mr. Owens billed 4.9 hours to this matter, during which time he principally provided electronic discovery and litigation support. (*Id.*) Mr. Owens's hourly rate was $365 per hour in 2017 and $234 per hour thereafter. (*Id.*)

(14) Mark Workman is a Florida Registered Paralegal and a Certified Paralegal in Business Litigation with more than 30 years' experience. (Losego Aff. ¶ 22.) Mr. Workman billed 176.8 hours to this matter, during which time he provided litigation support. (*Id.*) Mr. Workman's hourly rate was $260 per hour in 2017 and $234 per hour thereafter. (*Id.*)

(15) Karen K. Castillo is a Florida Registered Paralegal in Business Litigation with more than 30 years' experience. (Losego Aff. ¶ 23.) Ms. Castillo billed 29.7 hours to this matter, during which time she provided litigation support, including work relating to BSI's document productions and preparation of privilege and redaction logs. (*Id.*) Ms. Castillo's hourly rate was $240 per hour in 2017 and $234 per hour thereafter. (*Id.*)

(16)     Michelle L. Albrecht is a Florida Registered Paralegal and a National Association of Legal Assistants Certified Paralegal with more than 20 years' experience. (Losego Aff. ¶ 24.) Ms. Albrecht billed 13.1 hours to this matter, during which time she provided litigation support, including work relating to BSI's document productions and preparation of privilege and redaction logs. (*Id.*) Ms. Albrecht's hourly rate was $250 per hour. (*Id.*)

Sixth, the motion must describe and document with invoices all incurred and claimed fees and expenses not taxable under 28 U.S.C. § 1920. In addition to the attorney's fees described above ($1,182,475.30), BSI is entitled to reimbursement of $18,666.43, the sum of its postage, copying, and imaging charges ($8,817.49), its translation expenses ($7,991.52), its share of the parties' mediation fee ($910.01), its delivery charges ($450.66), its travel expenses ($300), its telephone charges ($96.54), its PACER charges ($80.20), and the cost of a legal treatise ($20.01). (Losego Aff. ¶ 30.) Supporting documentation is attached to Mr. Losego's affidavit as Exhibit B.

## II.     BSI'S ATTORNEY'S FEES WERE REASONABLE.

BSI's attorney's fees were reasonable, and this Court should award BSI the full $1,182,475.30 in attorney's fees it seeks.[9] Courts in this Circuit calculate reasonable attorney's fees by multiplying each attorney's reasonable hourly rate by the number of hours reasonably expended on the litigation. *See generally Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). BSI's counsel's rates and hours were each reasonable.

First, BSI's counsel's hourly rates were reasonable. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299 (citation omitted). The rates counsel for BSI charged are comparable to rates courts in this District have accepted as prevailing market rates in South Florida. *See, e.g., Domond v. PeopleNetwork APS*, 750 F. App'x 844, 848 (11th Cir. 2018) (approving attorney rates of $650 per hour and $425

---

[9]     To date, Villamorey or its affiliate has indemnified BSI for certain of its attorney's fees, costs, and expenses in accordance with BSI and Villamorey's account agreement and an indemnification agreement. (Losego Aff. ¶ 31.) BSI may assign its award of attorney's fees and costs, or portions thereof, to Villamorey in consideration of those indemnification payments. (*Id.*)

10

per hour, citing evidence of "average partner rate of $655" per hour in Miami); *PDVSA US Litig. Tr. v. Lukoil Pan Ams. LLC*, Case No. 1:18-CV-20818-GAYLES/OTAZO-REYES (S.D. Fla. Mar. 2, 2020) (adopting report and recommendation concluding rates of $625 per hour, $350 per hour, and $125 per hour are reasonable for shareholders, associates, and paralegals, respectively); *cf. Kleiman v. Wright*, Case No. 18-80176-CV-Bloom/Reinhart (S.D. Fla. Mar. 17, 2020) (concluding rates of $675 per hour (attorney admitted to Florida Bar in 1993), $500 per hour (attorney admitted to Florida Bar in 2012), $350 per hour (attorney admitted in New York Bar in 2017), and $300 per hour (attorney admitted to New York Bar in 2019) are reasonable in Palm Beach County); *Parrot Inc. v. NiceStuff Distrib. Int'l, Inc.*, No. 06-61231-CIV, 2010 WL 680948, at *12 (S.D. Fla. Feb. 24, 2010) (shareholder rate of $500 per hour, associate rates of $335 per hour and $270 per hour, and paralegal rate of $205 per hour were reasonable in 2009). Furthermore, Gunster discounted the standard rates it charged for certain of its timekeepers, including Mr. Losego and Mr. McGinn, Gunster's two principal timekeepers, whose billed amounts represent approximately 70 percent of BSI's attorney's fees.[10] (Losego Aff. ¶¶ 26–28.)

Counsel for BSI also expended a reasonable number of hours on the litigation. Based on its alleged judgment of close to $20 million, BDT sought to garnish at least $13.6 million on deposit at BSI, all of which Villamorey had assigned, transferred, granted, and pledged to BSI as security for an affiliate's $24.1 million loan. (*See generally* ECF No. 212.) In addition to BSI's significant financial stake in the outcome, the action itself was "not-straightforward." (ECF No. 327 at 1.) The parties' dispute regarding ownership of the funds at issue required BSI to address, among other things, Panamanian corporate and property law, other jurisdictions' corporate law (raised by BDT), the validity of BDT's judgment against its corporate affiliate Lisa, and the validity of BSI's perfected security interest. (*See, e.g.*, ECF No. 212, ECF No. 232.)

Additionally, BDT's actions extended the litigation needlessly and magnified BSI's legal expenses considerably. To begin with, BDT refused to concede the dissolution of its Writ after BSI moved for judgment on the pleadings. (ECF No. 159.) Had BDT

---

[10] Gunster discounted Mr. Losego's standard rate by four percent in 2018, by 7.7 percent in 2019, and by 12.4 percent in 2020. (Losego Aff. ¶ 27.) Gunster discounted Mr. McGinn's standard rate by 4.7 percent in 2018 and by 12.9 percent in 2019. (Losego Aff. ¶ 28.)

11

acknowledged the Writ had dissolved, instead of making a series of meritless arguments with "no foundation in the [relevant] statute's text" (ECF No. 327 at 13), BSI would have been spared months of litigation, including summary judgment briefing and final pre-trial preparations. BDT compounded its error by obtaining a second, post-removal writ of garnishment from the state court, in clear violation of that court's duty to proceed no further, which required BSI to obtain a writ of injunction from this Court and then defend this Court's writ after BDT moved for rehearing. (ECF No. 181, ECF No. 192, ECF No. 202, ECF No. 222.) BDT also moved this Court to issue its own writ of garnishment (ECF No. 197); although BDT contemporaneously admitted that this Court lacked the authority to issue such a writ (ECF No. 202 at 9), BSI incurred time and expense responding to the frivolous motion. (ECF No. 203.) BDT violated the Court's protective order and disclosed BSI's confidential information to non-parties, compelling BSI to move for sanctions. (ECF No. 44.) Finally, BDT (and Lisa) refused to disclose basic information regarding their common ownership, their financial relationship, the promissory note Lisa supposedly issued to BDT, Lisa's ownership interest in Villamorey, and agreements addressing the debts Lisa may owe BDT. (*See, e.g.*, ECF No. 195.) BDT's (and Lisa's) refusal to produce this relevant discovery in accordance with the Federal Rules of Civil Procedure required BSI to seek Court assistance on numerous occasions. In short, counsel for BSI expended precisely the number of hours that BDT forced them to expend in defending this action.

Because BSI's attorney's rates and the number of hours expended on the litigation were reasonable, and because Florida's garnishment "statutes contemplate that the garnishee will have no liability or out-of-pocket expense due to the garnishment," this Court should award BSI all legal fees sought, i.e., $1,182,475.30. *See Suntrust Bank*, 199 So. 3d at 1028 (emphasis added).

## CONCLUSION

BSI is entitled to its expenses, costs, and reasonable attorney's fees pursuant to Section 77.28, Florida Statutes, and has established it reasonably incurred $1,182,475.30 in attorney's fees and $18,666.43 in other expenses and costs. The Court should therefore enter an award of $1,201,141.73 in favor of BSI and against BDT.

## CERTIFICATION OF ATTEMPTED GOOD-FAITH CONFERENCE

BSI has attempted to meet and confer with BDT, but BDT has not provided its objections to the motion, if any, or made itself available to discuss the motion. BSI served a draft of this motion on BDT on March 25, 2020. BDT did not respond. On April 13, 2020, counsel for BSI sent BDT dates and times at which he was available to meet and confer regarding this motion and requested alternatives from BDT in the event those offered were not mutually convenient. On April 14, 2020, BDT responded that it had written to the Court to request additional time to retain new counsel. Counsel for BSI informed BDT that BSI did not object to BDT's request for an extension of time for its new counsel to enter an appearance and consented to a 45-day extension of the parties' deadline to meet and confer regarding this motion. On April 16, 2020, counsel for BSI wrote to BDT and said that the Court had not acted on BDT's request for an extension of time and that BSI intended to move forward with this motion. On April 24, 2020, the Court set a deadline of May 15, 2020, for BDT to retain new counsel and for that new counsel to file a notice of appearance. (ECF No. 397.) The Court also extended the parties' meet-and-confer deadline by 45 days (i.e., through May 28, 2020). (*Id.*) No counsel appeared for BDT on or before May 15, 2020 (or to date). Having heard nothing from BDT, counsel for BSI wrote to BDT on May 28, 2020, to request a meet and confer. BDT did not respond. On June 8, 2020, counsel for BSI wrote to BDT again and requested that BDT provide its objections to the motion and a time to discuss the same. Again, BDT did not respond.

## VERIFICATION

I, Clinton R. Losego, as one of the attorneys for Garnishee Banco Santander International, verify under penalty of perjury that the foregoing is true and correct. Executed on June 10, 2020.

*/s/ Clinton R. Losego*<br>
Clinton R. Losego

Dated: June 10, 2020

Respectfully submitted,

Gunster, Yoakley & Stewart, P.A.
600 Brickell Avenue
Suite 3500
Miami, Florida 33131
Tel: (305) 376-6000
Fax: (305) 376-6010

By:    */s/ Clinton R. Losego*
      Clinton R. Losego
      FBN: 818054
      closego@gunster.com
      Timothy J. McGinn
      FBN: 1000377
      tmcginn@gunster.com

*Counsel for Garnishee Defendant*
*Banco Santander International*

14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document and the attachments thereto are being served on this 10th day of June, 2020, on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:   */s/ Timothy J. McGinn*
      Timothy J. McGinn

## SERVICE LIST

| | |
|---|---|
| BDT Investments, Inc.<br>c/o Patrick Doig<br>1st Floor, Hastings House<br>Balmoral Gap, Hastings, Christ Church<br>Barbados BB14034<br>pdoig@bdtinvestments.com<br>andres@bdtinvestments.com<br><br>**BDT Investments, Inc.** | Edward H. Davis, Jr., Esq.<br>Arnoldo Lacayo, Esq.<br>Cristina Vicens Beard, Esq.<br>Fernando J. Menendez, Esq.<br>*Sequor Law, P.A.*<br>1111 Brickell Avenue, Suite 1250<br>Miami, Florida 33131<br>Phone: (305) 372-8282<br>Fax: (305) 372-8202<br>edavis@sequorlaw.com<br>alacayo@sequorlaw.com<br>cvicens@sequorlaw.com<br>fmenendez@sequorlaw.com<br><br>Annette C. Escobar, Esq.<br>*ACE Law Firm*<br>201 S. Biscayne Boulevard, Suite 800<br>Miami, Florida 33131<br>Phone: (305) 542-0544<br>aescobar@acelawfirm.com<br><br>**Counsel for Villamorey, S.A.** |

| | |
|---|---|
| Allan A. Joseph, Esq.<br>*Fuerst Ittleman David & Joseph*<br>SunTrust International Center<br>One Southeast Third Avenue<br>Suite 1800<br>Miami, FL  33131<br>Phone: (305) 350-5690<br>Fax: (305) 371-8989<br>ajoseph@fidjlaw.com<br>lcabrera@fidjlaw.com<br><br>Andrew J. Durkovic, Esq. (*pro hac vice*)<br>*Amsterdam & Partners, LLP*<br>Canal Square<br>1054 31st Street, N.W.<br>Suite 100<br>Washington, D.C. 20007<br>Phone: (202) 559-3499<br>a.durkovic@amsterdamandpartners.com<br><br>Elizabeth Price Foley, Esq.<br>*Baker Hostetler, LLP*<br>1050 Connecticut Avenue, N.W.<br>Suite 1100<br>Washington, D.C. 20036<br>Phone: (202) 861-1500<br>Fax: (202) 861-1783<br>efoley@bakerlaw.com<br><br>**Counsel for Lisa S.A.** | |